PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ARÍSTIDES AYALA, Defendant and Appellant.

No. 6826. Argued January 21, 1938.—Decided February 25, 1938.

*E. Pérez Casalduc* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

Arístides Ayala was charged with illegally carrying a revolver. Upon sentence to two months in jail and to costs, he appealed to this Supreme Court. We shall examine only two of the assignments of errors alleged to have been committed by the court below, to-wit:

"The trial court erred in weighing the evidence for the prosecution and in holding that it is sufficient to show defendant's guilt."

The evidence presented by the prosecuting attorney may be summarized as follows:

Alfredo Fabián, an insular policeman, testified that on March 14, 1936, he was on duty in Manatí; that that night

752

he was on duty on the balcony of the police headquarters and heard five shots, being able from where he was to see the flashes but without being able to tell whether the shots were fired from two different places; that he went to the place with the police corporal and there found two wounded men, one Rafael Arce and the other Arcadio Fernández. Immediately after this part of his testimony, the examination went as follows:

"Q. Did you help to take him to the hospital?

"A. Yes, sir.

"Q. Did Arcadio Fernández make any statement at the moment you got there?

"Counsel. I object. No foundation has been laid.

"Q. How long after the firing stopped was it that you went to the place?

"A. Almost at once.

"Q. How did you find Arcadio Fernández?

"A. Wounded.

"Q. What did he do?

"A. They have wounded me, he said.

"Q. When did he make the statements?

"Counsel. It is already apparent that he said nothing at the moment.

"Judge. If it is in time to be raised the Court will strike it (*sic*).

"Counsel. Exception.

"Witness. He says: They have wounded me.

"Q. Did you take him to the hospital?

"A. Yes, sir.

"Q. How much time did you take in going to the hospital?

"A. Five minutes at least.

"Q. Did he say anything on the way?

"Counsel. I object.

"Judge. Overruled.

"Counsel. Exception. At the moment he heard him say nothing.

"Witness. It was then he said that it had been Arístides.

"Q. Where? On the way?

"A. In the hospital.

"Q. How did he say it?

"A. Arístides, he didn't use the surname.

"Q. Do you know him?

"A. The man seated there (the defendant).

"Q. Was he referring to him?

"A. I don't know."

At this point in the examination, the court rebuked the witness, stating that the police ought not to show favoritism and that the court believed that the witness by his testimony was favoring the defendant. The witness confirmed what he had said, stating: "Yes, sir; without stating the surname, and I have a sworn declaration which is in court." He continued his testimony, stating that he made no arrest; and that he later learned that the defendant had been arrested.

Benito Pérez, an insular policeman, testified that on hearing the shots he went to the place and there found Arcadio Fernández, *alias* Malas Noches; that the latter in running opened his arms and he saw that he was wounded in the left breast; that he asked him: "Who wounded you?," and the man answered: "Arístides Ayala; we shot at each other and he wounded me"; that no other policeman came there at any time; that he took the wounded man and with two or three others took to the hospital; that he did not arrest the defendant; that the wounded man died about two or three months later, as a result of some shooting in Monte Bello ward, and that he killed a policeman.

The prosecuting attorney then offered the testimony of a medical expert to show that Arcadio Fernández had been wounded. The defense objected upon the ground that his name did not appear in the information as a witness for the prosecution and on the further ground that the witness was present during the trial and had heard the witnesses for the prosecution who had preceded him testify. The court admitted the testimony "as tending to corroborate in part the testimony of the police to the effect that he wounded man stated that the defendant had been the one who wounded him." The defense took an exception. Doctor Juan A. Pons testified to the effect that he had examined the wounded

man; that he showed a bullet wound; that he had extracted the bullet offered in evidence by the prosecuting attorney to show that the wound had been inflicted with a deadly weapon.

For the defendant the following testimony was offered:

Antonio Vázquez Laureano testified: that he was walking along with Rafael Arce at the moment when they heard some shots; that they stopped and saw Arcadio, *alias* Malas Noches and another man firing at each other and a tall man in a dark shirt ran and Arcadio ran after him, firing, and wounded Rafael Arce; that he knows Arístides Ayala, the defendant; that the other person who was firing was not Arístides Ayala.

To impeach this witness, the prosecuting attorney asked him if he already knew when he testified before the municipal judge that Arístides Ayala had been arrested, to which the witness answered in the affirmative. The prosecuting attorney then asked: "Why, knowing that the defendant had already been arrested on this matter, did you not so state to the municipal judge in your testimony, that he was not the other person who was running with a revolver?" The defense objected on the ground that the only admissible evidence was that contradicting the testimony of the witness at the trial itself. The court then asked the witness:

"Q. How, if you could not recognize the person who fired, do you know it was not Arístides Ayala?

"Witness. If it had been Arístides Ayala I would have known him, because I knew him before, but I did not know the man there before and I cannot say who he was and I only saw his clothes."

The witness continued, stating that he had not informed the municipal judge that it was not the defendant who had fired the shots because the judge had not asked him.

The testimony of this witness before the municipal judge is identical with his testimony at the trial. We find no discrepancy or contradiction in them which could serve as a basis for impeaching his testimony at the trial or for discrediting the witness. The fact that the witness did not

advise the municipal judge that Ayala was not the other man who had fired, as to which the judge did not question him, is as much an omission of the judge as of the witness, but it is not a contradiction of the witness affecting his credibility.

Rafael Arce gave substantially the same testimony as Antonio Vázquez, and that he knew Arcadio Fernández like his own hands. On being asked by the counsel for the defendant whether he had spoken with Arcadio Fernández after the date of the shooting, there was an objection by the prosecuting attorney on the ground that such a conversation was not part of the *res gestae*. Counsel for the defendant contended that since statements made by Fernández some moments after he had been wounded had been admitted, his contradictory statements made subsequently were also admissible to impeach his veracity. The court sustained the prosecuting attorney's objection, and the defendant noted an exception.

The witness continued to testify, stating that he did not see Arcadio Fernández there; that he saw him when he ran, but did not see him fire either at the witness or at anyone; that he saw him when he, the witness, fell wounded; that he did not see Arístides Ayala.

The prosecuting attorney offered to the witness his statement made before the municipal judge. The witness, after reading it, recognized it as his statement. In it the witness said, "that in a little while affiant felt himself wounded, but did not know who had so wounded him. Neither did he see there either Arcadio Fernández or Arístides Ayala." Over defendant's objection, the court admitted the statement so offered for the purpose of impeaching the witness. Defendant took an exception.

We have read with care witness' statement before the municipal judge and we do not find that it differs from or contradicts his testimony at the trial as to the substance of the point under investigation; that is, whether Arístides Ayala, the defendant, was on the scene where and at the

moment in which the shooting occurred. Both of his statements are identical on this point. The witness testified on both occasions that he had not seen the defendant there.

The trial ended with the following interchange:

The defendant asked that the stenographer be put on the stand to read the statements of the prosecuting attorney in moving for dismissal of the case brought against the defendant for attempt to kill. The prosecuting attorney objected. The court held that what the prosecuting attorney had said in the other case was not admissible as evidence in a prosecution for carrying weapons, and, "furthermore, because the only thing that the prosecuting attorney said was: that he had no evidence for a prosecution for attempt to kill." The defendant took an exception.

Putting aside the evidence offered by the defendant and looking only at the evidence offered by the prosecuting attorney, we find that the only evidence tending to connect the defendant with the commission of the crime of which he is charged is hearsay evidence, which, although correctly admitted by the trial court as part of the *res gestae,* is not in itself sufficient, in our judgment, to sustain a conviction. This conclusion is the more inevitable if consideration be given to the fact that Arcadio Fernández, the person who it is said made the statement tending to incriminate the defendant, died prior to the date of the trial. No evidence whatever appears from the record tending to corroborate the statements said to have been made by the wounded man to the two policemen. See: *Williams* v. *State,* (11 Ga. App. 662) 75 S. E. 988, holding that hearsay testimony, although admissible as part of the *res gestae,* is insufficient to convict, unless there is some other essential fact established by other evidence.

Therefore, and in view of all the circumstances in this case, the judgment must be reversed and the defendant discharged.

Mr. Justice Córdova Dávila took no part in the decision of this case.